ROY C. ZOBRIST *v.* CITY OF WESTON *et al.*

(No. 7672)

*and*

A. P. BAILEY *v.* CITY OF WESTON *et al.*

(No. 7673)

Submitted July 25, 1933.   Decided August 3, 1933.

*Kenneth S. Kurtz* and *Herbert M. Blair,* for relators.

*James H. Brewster, Jr.,* and *Edward A. Brannon,* for respondents.

18

WOODS, JUDGE:

Roy C. Zobrist and A. P. Bailey, chief of police and street commissioner, respectively, elective officers of the City of Weston, seek, by mandamus, to compel the city, through its duly constituted officers, to pay their respective salaries on the basis of $142.50 per month, or $1,710.00 per year, as fixed by the council on September 8, 1932.

The charter of the City of Weston, in reference to the matter of salary, provides: " * * * and the said council shall, by ordinance, define the duties of all said officers so elected and appointed as aforesaid, and allow them reasonable compensation, and which compensation shall not be increased or diminished during their term of office." Section 16, chapter 90, Acts 1913.

By its order of April 6, 1931, the city council definitely fixed the salaries of the chief of police and the street commissioner at $1,900.00 per year each. This order was modified on September 8, 1932, pursuant to an Act of the Extraordinary Session of 1932, by directing the 10 per cent reduction provided in said Act, which reduction was accepted by the incumbents. As the situation presented itself when petitioners (who had been elected March 21, 1933, and who had duly qualified prior to April 3, 1933) assumed the duties of their respective offices on the morning of April 3, 1933, the salaries then attached to their offices were $1,710.00 per year each. At the time of the election of relators, a new council was also elected. This council met on the evening of April 3, 1933, and entered an order purporting to reduce the salaries of relators to $1,200.00 per year each.

It will be observed that the relators had already entered upon their respective duties as officers of the city, pursuant to their election as such. Neither of the actions of the city in fixing the official salaries seems to have enacted it as an ordinance. It was by councilmanic order merely.

It will also be observed that the charter of the city contains the inhibition that the compensation of an official thereof "shall not be increased or diminished during their term of office." This is the provision upon which relators rely for mandamus. The city counters by asserting the right of each

council to make provision for salaries of the incoming officials. It relies upon the case of *Rucker v. Board of Supervisors*, 7 W. Va. 661. A reference to that case shows that section 9 of Article III of the Constitution of 1863, providing that no salary or compensation of any public officer shall be increased or diminished during his term of office, applied only to such salaries or compensation of public officers as had been definitely fixed or prescribed by law; either by the constitution of the state, or by some statute made in pursuance thereof.

In the *Rucker* case the prosecuting attorney received no fixed salary at that time, prescribed by law, but his compensation consisted of such fees as were allowed to be taxed for his benefit, under different provisions of the Code.

In the instant case, the city had, by virtue of its charter, fixed the salaries of the officers seeking mandamus. The same provision giving the right to fix the salaries contained the inhibition against their being either raised or lowered during the term of the incumbent. These officers were elected for the term of two years. At the time the council acted they had entered upon their duties thereof. We must hold that this attempted reduction of their salaries was abortive under that inhibition. The city has no power except that delegated to it under its charter. It must act as that charter directs.

Therefore, the writs as prayed for must be awarded.

*Writs awarded.*